## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

ST. PAUL'S ENGLISH EVANGELICAL LUTHERAN CHURCH

      Plaintiff,

v.

CHURCH MUTUAL INSURANCE COMPANY,

      Defendant.

---

## COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

---

**COMES NOW** Plaintiff, St. Paul's English Evangelical Lutheran Church by and through its undersigned counsel, and hereby submit this its Complaint against Defendant, Church Mutual Insurance Company, and in support of its Complaint, allege and aver as follows:

### NATURE OF CLAIMS

1.    Plaintiff brings this action under Federal Rule of Civil Procedure 56 seeking a determination of the parties' legal rights and obligations under the insurance policy and seeking economic and non-economic damages related to Defendant's breach of contract, statutory claims pursuant to C.R.S. §§10-3-1115 and 10-3-1116, and bad faith breach of insurance contract, arising from Defendant's unreasonable delay and failure to pay in full covered benefits due and owing to Plaintiff under its insurance policy.

### PARTIES

2.    Plaintiff, St. Paul's English Evangelical Lutheran Church ("Plaintiff" or "St. Paul's Lutheran") is a Colorado nonprofit corporation with its principal office in Denver, Colorado.

3.      Upon information and belief, Defendant, Church Mutual Insurance Company ("Defendant" or "Church Mutual"), is an insurance company licensed with the State of Colorado with the Division of Insurance engaged in the business of issuing property and casualty insurance policies insuring commercial and other properties in the State of Colorado.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction and venue is proper pursuant to 28 U.S.C. §§ 1332(a) and 1441. There is complete diversity among the parties and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. The property which is the subject of the claim and the adjustment of the claim occurred in Colorado.

## FACTS COMMON TO ALL COUNTS

5.      This matter arises from a disputed property insurance claim occurring during the time that Defendant's insurance policy provided coverage for Plaintiff's insured property.

6.      In exchange for the premium paid, Defendant issued Plaintiff a commercial property insurance policy, Policy Number 0061334-02-906122 (the "Policy").

7.      The Policy provides coverage to property located at 1600 Grant Street, Denver, Colorado 80203-1602 (the "Property").

8.      The Policy is an all risk policy of insurance.

9.      The Policy is a replacement cost value policy and covers loss to the Property.

10.     The Policy provides coverage for direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

11.     The Policy provides coverage for alterations to the physical appearance of the Property resulting from hail or wind.

12.    The Policy provides coverage for cosmetic damage to the Property resulting from hail or wind.

13.    The Policy provides for the repair, rebuild or replacement of the damaged property with other property of like kind and quality.

14.    The Policy does not require that the Property sustain functional damage for coverage to be afforded to direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

15.    The Policy does not require that the water-shedding capabilities of a roofing system be compromised for coverage.

16.    The Policy does not require that the long-term service life of a roofing system be compromised for coverage.

17.    The Policy does not require that the functionality of a building component be compromised for coverage.

18.    The Policy does not include a cosmetic exclusion.

19.    The Policy does not provide a cosmetic limiting endorsement.

20.    The Policy provides coverage for the reasonable uniform appearance between the repair, rebuild or replacement of the damaged property and the materials existing on the Property.

21.    Under the Policy, Defendant agreed to adjust all losses with Plaintiff fairly and timely.

22.    Plaintiff paid the premiums due under the Policy in a timely manner.

23.    Plaintiff performed all duties and responsibilities required of it under the Policy.

24.    General contractor overhead and profit are the fees charged by a general contractor to manage, supervise, and coordinate repairs to damaged property such as Plaintiff's Property.

25.     The Policy provides coverage for general contractor overhead and profit when it is reasonably likely the services of a general contractor would be required to manage, supervise, and coordinate repairs to the Property.

26.     Plaintiff is entitled to general contractor overhead and profit under the Policy regardless of its intention to complete repairs to the Property when it is reasonably likely the services of a general contractor would be required to manage, supervise, and coordinate repairs to the Property.

27.     Plaintiff is entitled to general contractor overhead and profit under the Policy regardless of whether Plaintiff will actually be using a general contractor to complete repairs to the Property when it is reasonably likely the services of a general contractor would be required to manage, supervise, and coordinate repairs to the Property.

28.     Plaintiff is entitled to general contractor overhead and profit under the Policy regardless of whether Plaintiff will itself be completing repairs to the Property when it is reasonably likely the services of a general contractor would be required to manage, supervise, and coordinate repairs to the Property.

29.     Plaintiff is entitled to payment of general contractor overhead and profit under the Policy on an actual cash value basis when it is reasonably likely the services of a general contractor would be required to manage, supervise, and coordinate repairs to the Property.

30.     On or about May 8, 2017, during the Policy period, the Property suffered direct physical loss and/or damage resulting from hail and/or wind.

31.     The direct physical loss and/or damage resulting from the hail and/or wind constituted a covered loss under the Policy.

32.     The hail and wind storm caused direct physical loss and/or damage to the roofing systems covering the Property.

33.     The direct physical loss and/or damage resulting from the hail and/or wind resulted in functional damage to the Property leading to interior leaks.

34.     The direct physical loss and/or damage resulting from the hail and/or wind prevented the roofing systems covering the Property from continuing to function as a barrier to entrance of the elements to the same extent as they did before the hail damage occurred.

35.     The direct physical loss and/or damage resulting from the hail and/or wind has diminished the long-term service life of the roofing systems covering the Property.

36.     The direct physical loss and/or damage resulting from the hail and/or wind was promptly reported to Defendant by Plaintiff.

37.     Defendant is a for-profit insurance company.

38.     Defendant assigned Claim Number 1356865 to Plaintiff's loss.

39.     Defendant assigned its claims adjuster, Cathy Crone, to investigate and adjust Plaintiff's claim for direct physical loss and/or damage to the Property resulting from the hail and/or wind event.

40.     Defendant retained Rimkus Consulting Group ("Rimkus") to inspect the building for storm damages.

41.     According to the Rimkus report, Rimkus was only retained to evaluate the roof coverings at the Property.

42.     Rimkus evaluated weather data ranging from May 23, 2015 through June 24, 2018 (the "Event Period").

43.     Rimkus inspected the property on September 6, 2018.

44.    Rimkus concluded the "clay tile roofs were not damaged by impacts from hailstones during the Event Period. The clay roof tiles were damaged by footfall, weathering, erosion, and mechanical impacts."

45.    Rimkus concluded the "slate tile roofs were not damaged by impacts from hailstones during the Event Period. The slate tiles were damaged by footfall, improper installation, weathering, erosion, and mechanical impacts."

46.    Rimkus concluded "the ethylene propylene diene terpolymer (EPDM) roof coverings were not damaged by impacts from hailstones during the Event Period. The reported water intrusions at the EPDM roof were the result of deferred maintenance."

47.    Rimkus opined 1.2-inch hail occurred at the Property on May 8, 2017.

48.    Rimkus confirmed within its report that "[e]ngineering studies have shown that the typical minimum diameter of a hailstone required to cause damage to clay roof tiles and slate roof tiles is approximately 1-1/2 inches."

49.    Notwithstanding Rimkus' confirmation of a hail event and the studies references, Rimkus attached the below photograph stating it was not the result of hail impact:



50.     Notwithstanding Rimkus' confirmation of a hail event and the studies references,

Rimkus attached the below photograph stating it was not the result of hail impact:



51.     Notwithstanding Rimkus' confirmation of a hail event and the studies references,

Rimkus attached the below photograph stating it was not the result of hail impact:



52.     Notwithstanding Rimkus' confirmation of a hail event and the studies references,

Rimkus attached the below photograph stating it was not the result of hail impact:



53.     Notwithstanding Rimkus' confirmation of a hail event and the studies references, Rimkus attached the below photograph stating it was not the result of hail impact:



54.     Rimkus did not inspect each slope of the roofing systems at the Property.

55.     Rimkus did not inspect the interior damages at the Property.

56.     Rimkus never interviewed any members of the church.

57.     Defendant failed to complete a full investigation and never inspected each slope of the roofing systems.

58.     Defendant failed to interview a single insured or member of the church to determine when the interior water damages occurred.

59.     Defendant agreed there was a covered loss under the policy; however, according to Defendant, the loss did not exceed the Policy's $5,000 deductible.

60.     Specifically, Defendant's agent, ICA, LLP produced an estimate for covered damages totaling $2,364.44.

61.     As a result of Defendant's failure to recognize coverage for Plaintiff's claim, Plaintiff retained a Colorado licensed professional engineer, Thomas Miller with Structural Engineering and Inspections ("SEI").

62.     On September 27, 2018, SEI completed its initial inspection of the Property.

63.     On February 28, 2019, SEI completed its second inspection of the Property.

64.     In addition to other storm related damages, SEI documented the following hail damages to the Property:



65.     In addition to other storm related damages, SEI documented the following hail damages to the Property:



66.     In addition to other storm related damages, SEI documented the following hail damages to the Property:



67.     In addition to other storm related damages, SEI documented the following hail damages to the Property:



68.     In addition to other storm related damages, SEI documented the following hail damages to the Property:



69.    SEI retained Nance Koslic, a consulting meteorologist with LRC Services.

70.    Ms. Koslic confirmed hail measuring up to 2.50 inches fell at the property on May 8, 2017.

71.    SEI opined the roofs need to be replaced as a result of the storm damages from the May 8, 2017 storm.

72.    On September 24, 2018, the tile manufacturer, Ludowici, issued correspondence confirming the "[t]he clay roof tile on the St. Paul Luther[a]n Church on 1600 Grant St. in Denver Colorado is a historic light weight interlocking tile old type (LWIOT) manufactured by Ludowici Roof Tile. This historic tile is no longer a current production tile. This tile is 8-1/2" x 12-3/4" any other size will not interlock together in the interlocking channel and cannot be used in a repair."

73.    Defendant failed to pay for the roofing systems.

74.    Defendant failed to pay for the damaged HVAC units.

75.    Defendant failed to pay for the interior leaking.

76.    Despite the obvious hail damage to the Property resulting in direct physical loss and damage to the Property, and the interior leaking resulting therefrom, Defendant denied payment for any additional damages.

77.    The Policy limits Colorado's statutory time period for Plaintiff to file a lawsuit to only two-years from the event.

78.     On May 7, 2019, Plaintiff requested Defendant to enter into a tolling agreement. No response was provided prior to the filing of this action.

79.     On May 7, 2019, Plaintiff inquired whether Defendant would agree to participate in the Policy's appraisal process. No response was provided prior to the filing of this action.

80.     Plaintiff has at all times fully cooperated with Defendant.

81.     Plaintiff has at all times attempted to work with Defendant and its representatives to move the claim forward and resolve the existing differences.

82.     Defendant, however, has continually refused to pay the full amounts due and owing under the Policy.

83.     To date, Defendant has refused to provide full indemnification to Plaintiff despite knowing or reasonably should know that it is required to do so.

84.     To date, Defendant has refused to perform a full and complete investigation with professionals that are unbiased. To the contrary, Defendant' investigation of the claim has been improper, inadequate, and untimely causing the unreasonable delay and denial of insurance benefits.

85.     Specifically, Rimkus' investigation was clearly inadequate in failing to inspect all of the roofing slopes and failing to inspect the interior water damages.

86.     Defendant's reliance on Rimkus' outcome-oriented investigation is unreasonable.

87.     Defendant knew, or should have known, that its actions were unreasonable. Despite this fact, Defendant acted unreasonably and with knowledge, or reckless disregard of, its unreasonableness, thereby causing damages to Plaintiff.

88.     Despite its duty to give equal consideration to all information, Defendant has ignored documentation illustrating covered damages to the Property, including photographs of clear hail damage and the reporting of interior water damages resulting from the storm.

89.     Defendant's course of conduct demonstrates its failure to conduct a full, fair, and thorough investigation of Plaintiff's claim for direct physical loss and damage resulting from the hail and/or wind storm occurring on or about May 8, 2017.

90.     Defendant's course of conduct demonstrates its failure to treat Plaintiff's interests with equal regard to its own.

91.     Despite receiving information substantiating a covered loss, Defendant has not attempted in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim where liability has become reasonably clear.

92.     Despite being provided with all information and documents necessary to demonstrate Plaintiff's claim for direct physical loss of and/or damage to the Property, Defendant has continued to unreasonably deny covered benefits to Plaintiff.

93.     Defendant has failed to reasonably investigate Plaintiff's claim for direct physical loss of and/or damage to the Property resulting from a hail and/or wind storm occurring on or about May 8, 2017.

94.     Defendant has ignored evidence of covered hail damage to the Property resulting from the hail and/or wind storm occurring on or about May 8, 2017.

95.     Defendant's failure to pay the claim in full has resulted in a breach of contract.

96.     Defendant's failure to pay the claim has resulted, and continues to result, in additional damages to the Property.

97.     Defendant's failure to pay the claim has resulted in financial hardship to Plaintiff.

98.     Defendant's to pay the claim has resulted in an unreasonable delay and denial in covered benefits without a reasonable basis.

99.     Plaintiff has fulfilled all duties required of it under the Policy after discovery of the loss.

100.     Plaintiff has performed all conditions precedent and subsequent required under the Policy, or alternatively, has been excused from performance by the acts, representations, and/or conduct of Defendant.

101.     Most concerning, Defendant has compelled Plaintiff to institute litigation to recover amounts due under its insurance Policy by offering substantially less than Plaintiff's amount of loss.

**FIRST CLAIM FOR RELIEF**
**(Request for Declaratory Relief – Compel Appraisal)**

102.     Plaintiff realleges and reaffirms Paragraphs 1-101 as if fully set forth herein.

103.     The Parties have a dispute as to Defendant's obligations to comply with the insurance Policy.

104.     On May 7, 2019, Plaintiff sent correspondence to Defendant invoking the appraisal provision contained in the insurance Policy.

105.     In relevant part, the Policy provides:

**2.     Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a.     Pay its chosen appraiser; and

b.      Bear the other expenses of the appraisal and umpire equally.

106.    Plaintiff has not received a response to its appraisal invocation prior to the filing of this action.

107.    Plaintiff is requesting this Court to order the parties to participate in the appraisal process as required by the terms and conditions of the Policy.

108.    There is an actual and justiciable controversy concerning Defendant's obligation to comply with the Policy and the effect of Defendant's refusal to do so.

**WHEREFORE** Plaintiff, St. Paul's English Evangelical Lutheran Church respectfully requests this Court enter judgment in its favor on Plaintiff's First Claim for Relief and determine: (1) Defendant is required to resolve any disputes over the amount of loss, including the causation of disputed damages, in the appraisal process; (2) Defendant must comply with the terms of the Policy and cannot modify or add terms or conditions that were not in the Policy at the time it was issued; and (3) awarding any other such relief as this Court deems just and appropriate.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

109.    Plaintiff realleges and reaffirms Paragraphs 1-101 as if fully set forth herein.

110.    Plaintiff and Defendant entered into a valid and enforceable contract for insurance.

111.    Plaintiff has fully complied with all provisions of the contract and all conditions precedent to coverage and this action.

112.    Despite the foregoing, Defendant has failed and/or refused to comply with its contractual obligations and pay for all covered damages at the Property.

113.    Defendant has breached the insurance contract by failing and/or refusing to pay the full amounts due and owing under the Policy in a timely manner.

114.    Defendant has breached the insurance contract by failing to promptly and properly adjust the loss suffered by Plaintiff.

115.    As a proximate result of Defendant's breaches of the insurance contract, Plaintiff has suffered damages and continues to suffer the loss.

**WHEREFORE**, Plaintiff, St. Paul's English Evangelical Lutheran Church respectfully requests this Court enter judgment against, Defendant, Church Mutual Insurance Company, for damages resulting from its breach of contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

## THIRD CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

116.    Plaintiff realleges and reaffirms Paragraphs 1-101 as if fully set forth herein.

117.    The insurance contract between Defendant and Plaintiff includes an implied obligation of good faith and fair dealing.

118.    Under the Policy and Colorado law, Defendant had a duty to act reasonably and in good faith in the handling of Plaintiff's claim.

119.    Under the Policy and Colorado law, Defendant had a duty to act with ordinary, reasonable diligence in investigating the claims submitted by Plaintiff.

120.    Under the Policy and Colorado law, Defendant had a duty to act with ordinary, reasonable diligence in determining the amounts due and owing under the Policy in question.

121.    Under the Policy and Colorado law, Defendant had a duty to act with ordinary, reasonable diligence to pay all amounts due and owing pursuant to the Policy in question.

122.    Under the Policy and Colorado law, Defendant owes Plaintiff the duty of good faith and fair dealing.

123.   Defendant has a continuing obligation to act in good faith during the adjustment of the claim.

124.   At all times material hereto, Defendant had the non-delegable duty to investigate the claim objectively and to not look for ways to deny benefits or attempt to not pay the full amount owed.

125.   At all times materials hereto, Defendant owed Plaintiff the duty to give equal consideration to the financial interests of its insured and not to give greater consideration to its own financial interests while investigating and adjusting its insured's claims.

126.   At all times material hereto, Defendant had an obligation to conduct a thorough, fair, unbiased, and timely investigation of the claim presented to it, and then properly evaluate and timely pay those claims.

127.   Defendant sold Plaintiff the Policy at issue, the intent of which was to provide benefits for covered losses that occurred during the Policy period.

128.   Defendant knew that the Policy was purchased to protect the Property in the event of a loss.

129.   Plaintiff has cooperated with Defendant in the processing of the claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

130.   Plaintiff has cooperated with Defendant in the investigation of the claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

131.   Plaintiff has not erected any obstacles to Defendant's ability to investigate Plaintiff's claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

132.   Plaintiff has not erected any obstacles to Defendant's ability to evaluate Plaintiff's claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

133.   Defendant disregarded the validity of Plaintiff's claim for direct physical loss and damage resulting from the hail and/or wind storm occurring on or about May 8, 2017.

134.   Defendant has breached its covenant of good faith and fair dealing that it owes to Plaintiff by engaging in a pattern of conduct designed to deprive Plaintiff of its rights and benefits under the Policy by failing to fully investigate Plaintiff's reported damages.

135.   Defendant failed to properly instruct Rimkus to fully investigate Plaintiff's claim resulting in a flawed investigation.

136.   Defendant breached its duty to act reasonably and in good faith by failing to conduct a reasonable and timely investigation of the facts and law applicable to this matter including its failure to identify clear evidence of hail related damages to the roofing systems.

137.   Defendant breached its duty to act reasonably and in good faith by failing to appropriately value the entire loss.

138.   Defendant breached its duty to act reasonably and in good faith by favoring its interests to the exclusion of Plaintiff.

139.   Defendant breached its duty to act reasonably and in good faith by failing to effectuate prompt, fair and equitable resolution of Plaintiff's claims after liability had become clear.

140.   Defendant breached its duty to act reasonably and in good faith by conducting an incomplete, or outcome-oriented investigation of the loss.

141.   Defendant breached its duty to act reasonably and in good faith by failing to properly evaluate estimates and reports of the loss submitted to it by Plaintiff's representatives.

142.   Defendant breached its duty to act reasonably and in good faith by incorrectly valuing the claim.

143.   Defendant breached its duty to act reasonably and in good faith by compelling Plaintiff to become involved in litigation to enforce the Policy and recover amounts due.

144.   Defendant breached its duty to act reasonably and in good faith by otherwise unreasonably and improperly handling Plaintiff's claim as provided for by C.R.S. § 10-3-1104.

145.   Defendant knew and/or should have known that its conduct was unreasonable.

146.   Defendant recklessly disregarded the fact that its conduct was unreasonable.

147.   Defendant's conduct constitutes a breach of the covenant of good faith and fair dealing implied in every insurance contract.

148.   As a result of Defendant's actions, Plaintiff has suffered damages, and continues to suffer the loss.

**WHEREFORE**, Plaintiff, St. Paul's English Evangelical Lutheran Church respectfully requests this Court enter judgment against Defendant, Church Mutual Insurance Company, for damages resulting from bad faith breach of insurance contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

### THIRD CLAIM FOR RELIEF
**(Unreasonable Delay and Denial of Payment of Covered Benefits
Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)**

149.   Plaintiff re-alleges and reaffirms Paragraphs 1-101 as though fully set forth herein.

150.   Plaintiff suffered a loss to Property covered by the Policy and provided timely notice of the direct physical loss and damage to Defendant.

151.     Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

152.     Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

153.     Plaintiff is a first-party claimant within the meaning of Colorado Revised Statute § 10-3-1115(1)(b)(1).

154.     Defendant delayed payment of covered benefits without a reasonable basis for its actions.

155.     Defendant denied payment of covered benefits without a reasonable basis for its actions.

156.     Defendant has delayed payment of the insurance benefits paid to date without a reasonable basis by failing to perform a full and complete investigation with competent and impartial individuals.

157.     Defendant has delayed and denied payment of covered insurance benefits without a reasonable basis by failing to promptly investigate the direct physical loss and damage resulting from a hail and wind storm occurring on May 8, 2017.

158.     Defendant has delayed and denied payment of covered insurance benefits without a reasonable basis by failing to promptly make payment for the direct physical loss and damage resulting from a hail and wind storm occurring on May 8, 2017.

159.     Defendant has delayed and denied payment of covered insurance benefits without a reasonable basis by ignoring relevant authority specifically refuting the positions Defendant has

taken in this matter, including photographs clearly documenting obvious hail damages to the roofing systems.

160.    Defendant has delayed and denied payment of covered insurance benefits without a reasonable basis by failing to properly instruct its retained consultants.

161.    Defendant has delayed and denied payment of covered insurance benefits without a reasonable basis by failing to complete a full investigation, including, but not limited to, failing to instruct its engineer to inspect the interior water damages, failing to properly interview the insured to determine when the water damages occurred to the interior, failing to review photographs from its consultants documenting clear evidence of hail damages to the roofing systems, and failing to consider information provided to it by Plaintiff.

162.    Because Defendant lacked a reasonable basis for which to delay and/or deny payment to Plaintiff, Defendant has violated C.R.S. § 10-3-1115 and is liable to Plaintiff for the remedies provided by C.R.S. § 10-3-1116.

163.    Based upon the foregoing Paragraphs is therefore entitled to two times the covered benefit, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

**WHEREFORE**, Plaintiff, St. Paul's English Evangelical Lutheran Church respectfully requests this Court enter judgment against Defendant, Church Mutual Insurance Company, for damages authorized pursuant to Colorado Revised Statute § 10-3-1116, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

## REQUEST FOR JURY TRIAL

164.    Plaintiff requests trial by jury with respect to all claims and issues triable to a jury.

Respectfully submitted this 7th day of May 2019.

          *s/ Jonathan E. Bukowski*
          Larry E. Bache, Jr., Esq.
          Colorado Bar No.: 51958
          Jonathan E. Bukowski, Esq.
          Colorado Bar No.: 45614
          Timothy G. Burchard, II
          Colorado Bar No.: 48635
          Merlin Law Group, PA
          1001 17th Street, Ste. 1150
          Denver, CO 80202
          Telephone:  720-665-9680
          Facsimile:   720-665-9681
          E-Mail: lbache@merlinlawgroup.com
          E-Mail: jbukowski@merlinlawgroup.com
          E-Mail: tburchard@merlinlawgroup.com